NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Bankruptcy Case No. 03-15673 |
| FAITH R. ENGLISH | : | Chapter 7 |
| Debtor. | : | |
| KAREN E. BEZNER, TRUSTEE OF FAITH R. ENGLISH | : | |
| Plaintiff | : | |
| vs. | : | Adversary No. 04-2796 |
| RICHARD J. ENGLISH and FAITH R. ENGLISH | : | **MEMORANDUM OPINION** |
| Defendants | : | Hearing Date: 4/11/05 |
| | : | Document #5 and #8 |

**APPEARANCES**

Attorney for Karen E. Bezner, Trustee/Plaintiff
Karen E. Bezner, Esquire
567 Park Avenue, Suite 103
Scotch Plains, New Jersey 07076

Attorney for Richard English/Defendant
Peter Emmons, Esquire
Gibbs & Gregory, L.L.C.
12 Trenton Road
Browns Mills, New Jersey 08015

Attorney for Faith R. English/Debtor/Defendant
Travis J. Richards, Esquire
12 Garden Street
Mt. Holly, New Jersey 06069

On October 15, 2004, the Trustee filed a one count complaint against Richard English and Faith English (collectively "Defendants") that sought authority to sell 20 Carlton Ave. in Mt. Holly pursuant to § 363(b), (f), and (h). On April 11, 2005, the court heard oral argument on the Trustee's motion for summary judgment and the Defendants' joint cross-motion for summary judgment.

The Supreme Court has established that "summary judgment is appropriate only when there is no genuine issue of material fact and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c). The party moving for summary judgment has the burden of establishing the nonexistence of any "genuine issues of material fact." Celotex Corp. v. Catrett, 477 U.S. 317 (1986). When, as is the case here, the court is presented with cross-motions for summary judgment, the court is to draw all reasonable inferences in favor of the party opposing the particular motion. Buttitta v. City of Chicago, 803 F.2d 213 (N.D. Ill. 1992), *aff'd*, 9 F.3d 1198 (7th Cir. 1993).     The core facts of this case are undisputed. Faith and Richard English were married on September 22, 1950. In 1963, they purchased 20 Carlton Ave in Mt. Holly ("the property"). They took title to the property as husband and wife. *See, Tr. cert. in further support; Deed dated May 22, 1963*. The Defendants lived together at the property until 1966. Ms. English has not resided at the premises since that time. The Defendants have never obtained a judgment of divorce or entered into a written property settlement agreement. Ms. English has signed documents indicating that she has an ownership interest in the property on several occasions since the separation, most recently in connection with a 1998 re-financing. As of the date of Ms. English's bankruptcy filing, record title to the property remained in the names of both spouses.

With those facts in mind, the court turns to the parties' legal arguments. First, the Trustee seeks to sell the property pursuant to § 363(b) and (f). Section 363(b)(1) provides that the "trustee, after notice

2

and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."
Section 363(f) provides that the "trustee may sell property under subsection (b) ... free and clear of any interest in such property of an entity ... only if -

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Because of the statute's use of the term "or", courts have interpreted the requirements of Section 363(f) to be disjunctive. In Re Elliot, 94 B.R. 343 (Bankr. E.D. Pa.1988). Accordingly, if any of the five conditions set forth in § 363(f) is met, the Trustee is empowered to sell property free and clear of liens. In this case, § 363(b)(4) is satisfied because the interest of Mr. English is in bona fide dispute. The Trustee would therefore be permitted to sell the property free and clear of his purported interest.

A finding in favor of the Trustee under § 363(f), however, is contingent on a finding under § 363(b) that the property that is sought to be sold is property of the estate. Section 541(a) provides that the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." As has been previously stated, it is not disputed that as of the commencement of this case the Debtor, along with Richard English, had legal title to the property. That does not end our inquiry, however, as there are exceptions to § 541(a)(1)'s broad sweep. For instance, § 541(d) provides that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor's legal title ... but not to the extent of

3

any equitable interest in such property that the debtor does not hold." The essence of the Defendants' argument, although not articulated under § 541(d), is that even if the Debtor had bare legal title to the property when she filed, she had no equitable interest, therefore, the Trustee should not be permitted to sell the property.

Before the court addresses the equitable interest argument, it must address the Defendants' various theories that the Debtor does not even have legal title to the property. The first such theory is premised on the position that the Debtor's interest in the property was transferred through the oral property settlement agreement in 1967[1]. Settlements, even when not reduced to writing, can be enforceable. Williams v. Vito, 365 N.J. Super. 225 (Law Div. 2003); Lahue v. Pio Costa, 263 N.J. Super. 575 (App. Div. 1993). Nonetheless, that general principal does not take an oral settlement agreement outside of the Statue of Frauds. New Jersey's Statute of Frauds at the time of the oral property settlement agreement provided that an agreement for the transfer of an interest in real estate had to be reduced to writing to be enforceable. N.J.S.A. 25:1-1(law amended in 1995 to provide that unwritten real estate transactions may be effective against certain parties); Graziano v. Grant, 326 N.J. Super. 328 (App. Div. 1999)(explaining previous state of the law). Since the property settlement agreement at issue here was never reduced to writing, it is unenforceable to the extent it attempted to transfer any interest in property. Therefore, the Defendants first theory must fail.

---

[1] The Defendants assert that in 1966 or 1967, (the Defendants' papers use both dates) they entered into an oral property settlement agreement in open court in front of a Superior Court judge in Burlington County. Because the court was not presented with a transcript of that hearing or an order that was issued by the Superior Court, the precise terms of the settlement are open to factual dispute. The court addresses the effect of that settlement later in the opinion.

4

The Defendants' second argument is that the Trustee was on constructive notice of the transfer at the time of the filing. Defendants rely on the case of Michalski v. U.S., 49 N.J. Super. 104 (Ch. Div. 1958) for the proposition that creditors are obligated to make inquiry with respect to the state of title, notwithstanding the recorded deed, when one tenant has exclusive possession of the property. Even accepting that legal proposition as correct, it does not carry the day for the Defendants. If a creditor, or the Trustee by virtue of § 544, were to have inquired as to the state of the title they would have justifiably concluded that the Debtor remained a one-half owner of the property despite her lack of residence there. An examination of the chain of title reveals that there were two mortgages issues subsequent to the original, with the most recent being June 26, 1998. Both of the mortgages were signed by Richard and Faith English as husband and wife and listed the property as the address for both of them. Thus, even if a party were on constructive notice further investigation would lead them to believe that the property was still held as entireties property. Such a conclusion is in keeping with the strong preference in New Jersey law for respecting the integrity of the recording system. Cox v. RKA Corp., 164 N.J. 487 (2000).

The final argument the Defendants make is that Mr. English obtained title to the property through adverse possession. As a general rule, a husband cannot obtain title to property from his wife by adverse possession during the continuance of the marital relationship. Am. Jur. 2d, *Adverse Possession*, § 182 (2004). Even exclusive possession is not necessarily considered adverse in a marital relationship. Id. There is discord in the cases regarding adverse possession when one spouse has been abandoned by the other. In the case cited by Defendants, Union Oil Co. v. Stewart, 158 Cal. 149 (1910), the court found that adverse possession of marital property was possible, but other cases categorically deny that right to spouses. *See, e.g.*, Kelley v. Kelley, 51 R.I. 173 (1931). Assuming for the moment that New Jersey

5

would recognize adverse possession by spouses, Mr. English must still prove that all of the elements are satisfied. Patent v. North Jersey Dist. Water Supp. Comm'n, 93 N.J. 180 (1983)(In an action for adverse possession the burden is on the party claiming title to establish all of the elements by a preponderance).

To prevail on an adverse possession action, the party claiming title must establish that his possession was "actual and exclusive, adverse and hostile, visible or notorious, and continued and uninterrupted." Patent at 186 (*citing* Foulke v. Bond, 41 N.J.L. 527, 545 (E. & A.1879)). All of those elements must exist for the entire statutory period. In this case, the relevant statutory period would be thirty years. N.J.S.A. 2A:14-31. Mr. English's claim of title by adverse possession must fail because his possession was not uninterrupted. Each time he had the Debtor sign mortgage documents he was reaffirming her title to the property and thus interrupting any claim he might have otherwise made that his sole possession of the property was hostile to her interest. J & M Land Co, v. First Union Nat'l Bank, 166 N.J. 493 (2001). Counsel's argument that the Debtor's name was included on the mortgage merely as a convenience is unavailing because if the Debtor did not have an interest in the property then signing documents suggesting she did would potentially have been fraudulent to the mortgage company. Since the most recent mortgage document was signed in 1998, any claim for adverse possession could only begin after that and would certainly fall short of the required thirty years.

Having rejected the claim that the Debtor did not have a legal interest in the property, the court is left with the task of determining the extent of the Debtor's equitable interest in the property. This task has been made much more difficult by the passage of years and failure to initiate a divorce. At oral argument, the Defendants urged the court to find that the Debtor did not have an equitable interest in the property because a matrimonial court would conclude that the property belonged exclusively to Mr. English. The

6

court does not agree that on the current record it could draw that conclusion as a matter of law.

Defendants' counsel cited the court to two cases that they thought controlled the issue: Brandenburg v. Brandenburg, 83 N.J. 198 (1980) and DiGiacomo v. DiGiacomo, 80 N.J. 155 (1979). Those rulings do not resolve the issue before the court; they just set the parameters for the inquiry. In Brandenburg, the court stated that "when an agreement is not written, only the actual division of marital property pursuant to that agreement will be considered sufficient evidence that the marital partnership is no longer viable." 83 N.J. at 208. The court went on to state that "[s]ince a partial distribution would not necessarily demonstrate the end of the marital partnership, an agreed distribution must involve 'a large part of the marital assets'." Id. at 209 (quoting DiGiacomo v. DiGiacomo, 80 N.J. 155, 159 (1979)). So the first element that the parties must establish is whether the alleged oral property settlement agreement dealt with the majority of the parties' marital assets and whether actual distribution of those assets occurred. If that can be established, then the date of the agreement will mark the termination point for the acquisition of marital assets. The second element the parties must establish is whether the oral settlement was in the range of what would have been awarded by a court. In both cases cited by the Defendants, the courts found that an oral property settlement agreement would only be enforceable if found to be fair and equitable. Brandenburg at 207 ("agreements will not bar equitable distribution unless they are equitable and fair...."); DiGiacomo at 159 (consensual oral distribution of property "is binding on the parties and will preclude equitable distribution ... provided it shall be deemed fair and equitable as of the time it was undertaken.") In both cases the matter was remanded back to the trial court to make further findings on that issue. That is the difficult task this court now faces: determining the precise terms of the alleged oral property settlement agreement and whether they would have been deemed fair and equitable in 1966 had

the matter been litigated. Therefore, the court must deny summary judgment on the issue of the existence of the property settlement agreement and (should it be proven valid) whether it was fair and equitable. If the property settlement agreement is found not to have been fair and equitable, then the court will have to determine equitable distribution *de novo*, but only as of the date of the agreement. DiGiacomo at 159 n. 2.

Although the court has denied summary judgment on the issue of the Debtor's equitable interest in the property, for purposes of judicial economy I will rule on the remainder of the Trustee's complaint. Section 363(h) permits the sale of property of the estate, under section 363(b), along with the interest of a co-owner of the property if, at the time of the commencement of the case, the debtor held an undivided interest in the property as a tenant in common, joint tenant, or tenant by the entirety, and if four conditions are met. Because the provision authorizes a trustee to sell and thereby deprive a nondebtor of its property, there are significant conditions to the exercise of the power. The sale of property held in the listed forms of tenancy may be authorized only if:

> (1) partition in kind of the property among the estate and any co-owners is impracticable;
> (2) the estate would realize significantly less from a sale of the estate's undivided interest than from a sale of the property free of the co-owners' interests;
> (3) the benefit to the estate from the property's sale outweighs any detriment to the co-owners; and
> (4) the property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

The Trustee must satisfy all these requirements to conduct a sale under section 363(h). Should the Trustee prevail on establishing that the property is property of the estate, the court finds that all of the elements of § 363(h) are satisfied. The first element is satisfied because this is a single family home and courts have consistently held that where property is a single family residence, there is no practicable manner of partition

other than a sale and a division of the proceeds. *See,* Bakst v. Griffin (*In re* Griffin), 123 B.R. 933, 935 (Bankr. S.D. Fla. 1991); Neylon v. Addario (In re Addario), 53 B.R. 335, 338 (Bankr. D. Mass. 1985). The second element is satisfied for similarly pragmatic reasons: the sale of one half of entireties property is simply not as valuable as an undivided interest. The third factor is usually the most difficult, but in this case Mr. English has not contested the issue. Nowhere in the written submissions or oral argument was it suggested that any possible detriment to Mr. English from the sale would outweighs the benefit to the estate should it be established that the Debtor has a one half interest in this property. Finally, it is clear that this property is not used in the utilities industry. Therefore, the court finds that should the Trustee prevail on her § 363(b) cause of action she will be permitted to sell the property free of any interest of Mr. English with his interest, if any, to attach to the proceeds of the sale.

Summary judgment is granted in part and denied in part. The trial will proceed on the limited issue of the Debtor's equitable interest in the property. Trial is scheduled for August 4, 2005. Under the current scheduling order, discovery had to be completed by April 30, 2005. If the parties think they need additional discovery based on this ruling then they should submit a consensual revised scheduling order. Trial will remain as scheduled unless the parties contact chambers and request an adjournment to accommodate additional discovery or report a settlement. Trustee should submit a form of order in accordance with this opinion.

_____
KATHRYN C. FERGUSON, U.S.B.J.
U.S. Bankruptcy Court

Dated: May 18, 2005